**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Trent HAWTHORNE, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Andre Monroe SMITH, Defendant–Appellant.**

Nos. 94–5282, 94–5283.

United States Court of Appeals, Fourth Circuit.

Submitted Dec. 13, 1995.

Decided Aug. 21, 1996.

Deborah S. Roe, McDermott, Roe & Jones, Hampton, Virginia, for Appellant Smith; Willard Montellous Robinson, Jr., Hall, Fox, Atlee & Robinson, P.C., Newport News, Virginia, for Appellant Hawthorne. Helen F. Fahey, United States Attorney, Robert E. Bradenham, II, Assistant United States Attorney, Norfolk, Virginia, for Appellee.

Before WILKINSON, Chief Judge, and HALL and WILLIAMS, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge HALL wrote the opinion, in which Chief Judge WILKINSON and Judge WILLIAMS joined.

## OPINION

K. K. HALL, Circuit Judge:

This case is before us on remand from the Supreme Court. Trent Hawthorne and Andre Monroe Smith petitioned the Court for a writ of certiorari following our affirmance of their convictions for conspiracy to distribute crack cocaine, *see* 21 U.S.C.A. §§ 841(a)(1), 846 (West 1981 and Supp.1996), and for use of a firearm during and in relation to a drug trafficking crime, *see* 18 U.S.C.A. § 924(c)(1) (West Supp.1996). *United States v. Hawthorne; United States v. Smith,* Nos. 94–5282, –5283, 45 F.3d 428 (4th Cir.1995) (unpublished). We also affirmed Hawthorne's conviction on a substantive drug trafficking count, and we upheld the district court's decision at sentencing to enhance his offense level two points for obstruction of justice.

While Hawthorne and Smith's petition was pending, the Court rendered its decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which narrowed the expansive meaning accorded by the court of appeals in that case to the word "use" in § 924(c)(1).[1] The Supreme Court subsequently granted the appellants' petition for certiorari, vacated our judgment, and remanded the case to us for further consideration in light of *Bailey. Hawthorne v. United States,* —— U.S. ——, 116 S.Ct. 664, 133 L.Ed.2d 516 (1995).

On remand, we directed that the parties file supplemental briefs addressing the effect of *Bailey* on the appellants' § 924(c)(1) convictions. We now conclude that those convictions must be vacated.

## I.

### A.

The facts leading up to the appellants' arrest were recited in our earlier opinion, and they need not be extensively repeated here. The evidence at trial established that Hawthorne and Smith sold crack cocaine out of a townhouse in Newport News, Virginia. When the police searched the residence, they discovered a portable firesafe that, when pried open, was found to contain nine grams of crack and two automatic pistols. A roommate testified that the pistols belonged to Hawthorne and Smith, and that the firearms were "present" during drug transactions conducted at the townhouse.

### B.

The statute at issue provides, in pertinent part:

Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, *uses* or *carries* a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

18 U.S.C.A. § 924(c)(1) (West Supp.1996) (emphases supplied). The "use" and "carry" elements of § 924(c)(1) are distinct; the statute is violated if a firearm is used *or* carried during and in relation to the named crimes. *Bailey,* —— U.S. at ——, 116 S.Ct. at 507. The indictment here charged only that Hawthorne and Smith "used" the firearms at issue; it did not allege that either appellant had carried one or both weapons.

■ To prove that a firearm has been "used" in the manner contemplated by § 924(c)(1), it is necessary that the government show that it has been "actively employed." *Id.* at ——, 116 S.Ct. at 506; *United States v. Hayden,* 85 F.3d 153, 161 (4th Cir.1996). One might imagine any number of ways that a firearm may be actively employed, and the Supreme Court has enumerated a few: "The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Bailey,* —— U.S. at ——, 116 S.Ct. at 508. A firearm is not "used" during a drug transaction if the offender does not disclose its presence to the persons with whom he is dealing. *Id.* Even so, the offender may still have violated the statute by "carrying" the firearm, *e.g.,* by keeping the gun "hidden in his clothing throughout [the] transaction." *Id.* at ——, 116 S.Ct. at 507.

### C.

■ The evidence in this case establishes only that the automatic pistols were "present" during the drug transactions conducted at the townhouse; the government's witness did not elaborate as to whether Hawthorne or Smith brandished, displayed, or referred to the pistols in a fashion sufficient to inform their customers of the firearms' presence. On the other hand, the witness neither stated nor intimated that the pistols had been concealed. Under the circumstances, we believe that a reasonable jury could infer that the

---

**1.** *See United States v. Bailey,* 36 F.3d 106, 115 (D.C.Cir.1994) ("[O]ne uses a gun, i.e., avails oneself of a gun, and therefore violates the statute, whenever one puts or keeps the gun in a particular place from which one (or one's agent) can gain access to it if and when needed to facilitate a drug crime.").

firearms had been left out in the open, and, therefore, that they had been "used" in the post-*Bailey* sense of the term. Upon viewing the trial evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we hold that it was sufficient to support the jury's verdict.[2]

## II.

Although the parties have, on remand, chosen to focus our attention on whether the evidence was sufficient to sustain the convictions, the resolution of that point in the government's favor does not end our inquiry. We have reviewed the transcripts of several colloquies between counsel and the district court, and it is apparent that the jury was instructed on § 924(c)(1)'s "use" element in a manner that has been proved deficient, that is, that the appellants could be found to have used the firearms at issue by virtue of their mere proximity.

 The Constitution requires that, in all cases where the right to a jury trial is preserved, criminal convictions must "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, —— U.S. ——, ——, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995); *United States v. Aramony*, 88 F.3d 1369, 1386–87 (4th Cir.1996). If the jury is misinstructed—or not instructed at all—as to an essential element of the crime, we must set aside the defendant's conviction unless we can say, beyond a reasonable doubt, that the jury actually made the finding that inheres in the element. *Aramony* at 1386–86; *United States v. Johnson*, 71 F.3d 139, 143 (4th Cir.1995); *United States v. Forbes*, 64 F.3d 928, 934–35 (4th Cir.1995) *see*

*Sullivan v. Louisiana*, 508 U.S. 275, 278–81, 113 S.Ct. 2078, 2081–82, 124 L.Ed.2d 182 (1993):

> The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. [T]o hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.

(citations omitted).

We cannot know the jury's rationale for finding that Hawthorne and Smith "used" the firearms seized by the police. We certainly cannot assume that it anticipated the Supreme Court's decision in *Bailey*, and, in its prescience, considered only whether the appellants "actively employed" the weapons; indeed, that it instead followed the district court's instructions and applied our pre-*Bailey* case law seems far more likely—even certain. We cannot, therefore, conclude beyond a reasonable doubt that the guilty verdicts were properly rendered in this case. Consequently, the appellants' § 924(c)(1) convictions must be vacated. Because the evidence was sufficient to sustain those convictions, Hawthorne and Smith may, at the government's option, be retried. *See, e.g., United States v. Starkes*, 32 F.3d 100, 101 (4th Cir.1994).

## III.

Our nullification of the appellants' convictions under § 924(c)(1) necessitates that we

---

**2.** We note that the indictment limited the time frame within which Hawthorne and Smith were charged with violating § 924(c)(1) to "[o]n or about June 29, 1993." Unfortunately, the roommate's account of the "two [or] three" drug transactions that he witnessed at the townhouse was as imprecise regarding the dates of those events as it was concerning the roles played by the firearms. However, inasmuch as it was established that the appellants moved into the townhouse less than three weeks prior to June 29, 1993, the lack of specificity in the govern-

ment's evidence did not violate their due process rights. *See United States v. Covington*, 411 F.2d 1087, 1088–89 (4th Cir.1969) (six-month variance between date of offense alleged in indictment and that established by the evidence was substantial—but not fatal—where both dates were within the statute of limitations, time was not an element of the offense, and the accused was neither prejudiced in preparing for trial nor put in jeopardy of being twice tried for the same offense).

also vacate their sentences.[3] At the initial sentencing, the appellants' firearm convictions precluded the government from seeking to enhance their sentences on the drug convictions for having possessed the automatic pistols. *See* United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(b)(1) (Nov. 1995) (providing for an increase of two in the base offense level if the defendant possesses a dangerous weapon in the commission of a drug trafficking offense); *see also* USSG § 2K2.4, comment. (n. 2) (proscribing the application of any specific offense characteristic for possessing a firearm where a sentence has been imposed under 18 U.S.C. §§ 844(h), 924(c), or 929(a) in conjunction with an offense underlying those statutes).

We note that, should the government elect to forgo a second trial on the § 924(c)(1) charges and proceed directly to resentencing, it may now decide to pursue the "possession" enhancement provided by USSG § 2D1.1(b)(1). *United States v. Clements,* 86 F.3d 599, 601 (6th Cir.1996); *United States v. Hernandez,* 85 F.3d 1023, 1032 (2d Cir.1996); *United States v. Lang,* 81 F.3d 955, 963 (10th Cir.1996); *United States v. Fennell,* 77 F.3d 510, 510–11 (D.C.Cir.1996); *United States v. Roulette,* 75 F.3d 418, 426 (8th Cir.1996), *petition for cert. filed,* June 18, 1996 (No. 95–9370).

### IV.

Hawthorne's and Smith's convictions for engaging in a conspiracy to distribute crack cocaine are affirmed, as is Hawthorne's conviction for possessing the drug with the intent to distribute it. Hawthorne's and Smith's convictions under 18 U.S.C. § 924(c)(1) are vacated, as are their sentences, and the case is remanded to the district court for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

---

3. Hawthorne's contention that the district court erred in increasing his offense level by two for obstructing justice is thus rendered moot. We affirm the appellants' remaining convictions for the reasons stated in our prior opinion.